1        UNITED STATES DISTRICT COURT

2        CENTRAL DISTRICT OF CALIFORNIA

3     HONORABLE PAUL L. ABRAMS, MAGISTRATE JUDGE

4  UNITED STATES OF AMERICA,           )
                                        )
5                                       )
                                        )
6                     Plaintiff,        )
                                        )
7                                       )
                                        )
8          Vs.                          )   No. 20CR-00536-DMG
                                        )
9                                       )
                                        )
10  NITA ALMUETE PADDIT PALMA,          )
                                        )
11                                      )
                                        )
12                    Defendant.        )
                                        )
13  _____   )

14

15

16     REPORTER'S TRANSCRIPT OF VIDEOCONFERENCE PROCEEDINGS

17                     VIA ZOOM

18               LOS ANGELES, CALIFORNIA

19             MONDAY, JANUARY 25, 2021

20

21

22           MIRIAM V. BAIRD, CSR 11893
         OFFICIAL U.S. DISTRICT COURT REPORTER
23              350 WEST FIRST STREET
                   FOURTH FLOOR
24         LOS ANGELES, CALIFORNIA 90012
                 MVB11893@AOL.COM
25

1                    **A P P E A R A N C E S**

2

3    **ON BEHALF OF THE PLAINTIFF,**      ROGER HSIEH
     **UNITED STATES OF AMERICA:**        AUSA - OFFICE OF US
4                                         ATTORNEY
                                          MAJOR FRAUDS SECTION
5                                         312 NORTH SPRING STREET
                                          SUITE 1100
6                                         LOS ANGELES, CA 90012

7

8

9    **ON BEHALF OF THE DEFENDANT,**      CAREL ALE
     **NITA ALMUETE PADDIT PALMA:**       FEDERAL PUBLIC DEFENDERS
10                                        OFFICE
                                          321 EAST 2ND STREET
11                                        LOS ANGELES, CA 90012

12

13

14

15   **ALSO APPEARING:**
     BESSILDA BERTRAND, TAGALOG INTERPRETER
16

17

18

19

20

21

22

23

24

25

|     |     |
| --- | --- |
| 1   | LOS ANGELES, CALIFORNIA; MONDAY, JANUARY 25, 2021; 5:40 P.M. |
| 2   | --- |
| 3   |     |
| 4   |     |
| 05:40PM 5 | THE CLERK:  Calling Case Number CR20-536-DMG, |
| 6   | United States of America versus Nita Almuete Paddit Palma. |
| 7   | MR. HSIEH:  Roger Hsieh on behalf of the |
| 8   | United States. |
| 9   | MS. ALE:  Good evening.  Carel Ale from the Federal |
| 05:40PM 10 | Public Defender's Office on behalf of Ms. Palma, who is in |
| 11  | custody being assisted assisted -- by a Tagalog interpreter. |
| 12  | THE COURT:  She has the phone, but I assume she's |
| 13  | not listening.  Has the interpreter dialed through to Ms. |
| 14  | Palma? |
| 05:41PM 15 | THE INTERPRETER:  Yes, Your Honor.  She doesn't |
| 16  | have it on her ear. |
| 17  | THE COURT:  Ms. Palma, can you hear me? |
| 18  | THE DEFENDANT:  This is a different phone. |
| 19  | MS. ALE:  The extension for the phone she has is |
| 05:42PM 20 | 2175. |
| 21  | THE INTERPRETER:  It might not be the right phone |
| 22  | number. |
| 23  | THE COURT:  I don't know why she keeps putting the |
| 24  | phone down.  Do you have contact with her now? |
| 05:43PM 25 | THE INTERPRETER:  Yes, Your Honor. |

1        THE COURT:  I think you need to mute.  Can you mute

2    when you're talking to her and unmute when you're

3    interpreting.

4        Ms. Palma, can you hear me and hear the interpreter

05:44PM    5    okay?

6        THE DEFENDANT:  Yes.

7        THE COURT:  Is Nita Paddit Palma your true name?

8        THE DEFENDANT:  Yes, that's right.

9        THE COURT:  Is it okay that we're appearing by

05:44PM   10    video today that you're on video and not in the courtroom

11    itself?

12        THE DEFENDANT:  It's okay.

13        THE COURT:  All right.  Did you help fill out a

14    financial affidavit today with Ms. Ale, the attorney?

05:45PM   15    THE DEFENDANT:  Yes.

16        THE COURT:  Are all of the statements in the

17    document true and correct?

18        THE DEFENDANT:  Yes.

19        THE COURT:  Did you tell Ms. Ale, that it was okay

05:45PM   20    to sign this document on your behalf?

21        THE DEFENDANT:  That's fine.

22        THE COURT:  I find you are entitled to appointed

23    counsel.  I'm going appoint Ms. Ale of the Federal Public

24    Defender's Office to represent you.  I am going to order

05:45PM   25    contribution, though, in the amount of $500 per month

| | |
|---|---|
| 1 | starting on February 1st and due on the first of each month |
| 2 | while the case is pending. |
| 3 | THE DEFENDANT:  Yes. |
| 4 | THE COURT:  Okay.  Now, has a statement of your |
| 05:45PM 5 | constitutional rights been read to you or described to you? |
| 6 | THE DEFENDANT:  Yes. |
| 7 | THE COURT:  Do you understand what your rights are? |
| 8 | THE DEFENDANT:  Yes. |
| 9 | THE COURT:  Have you either been given a copy of |
| 05:46PM 10 | the indictment, the charges, or has it been read to you or |
| 11 | described to you? |
| 12 | THE DEFENDANT:  I don't have a copy. |
| 13 | THE COURT:  What about the -- did you say anything |
| 14 | before that? |
| 05:46PM 15 | THE DEFENDANT:  I don't have a copy. |
| 16 | THE COURT:  Has it been read to you or have the |
| 17 | charges been described to you? |
| 18 | THE DEFENDANT:  Yes. |
| 19 | THE COURT:  All right.  I don't want to know if |
| 05:47PM 20 | what it says in the indictment is true.  I do want to know, |
| 21 | though, if you understand what it is that the government says |
| 22 | you did wrong? |
| 23 | THE DEFENDANT:  I did not do anything wrong. |
| 24 | THE COURT:  Do you understand what the government |
| 05:47PM 25 | says you did wrong? |

         1              THE DEFENDANT:  I did not do anything wrong.

         2              THE COURT:  Ms. Palma, I understand what you're

         3    saying.  I am asking if you understand what the government

         4    says you did wrong even if it's not true?  Do you understand

05:48PM  5    what they're saying you did?

         6              THE DEFENDANT:  I do not understand.  I do

         7    understand what the government is saying that I was wrong,

         8    but those are not correct.  Those were just --

         9              THE COURT:  I'm going to cut you off here.  It's

05:48PM 10    not necessary to complete that sentence.  Thank you.  The

        11    government has moved for detention.

        12              Ms. Ale, what is your desire?

        13              MS. ALE:  We're asking for bond today.

        14              THE COURT:  What is the government's proffer in

05:49PM 15    support for its request of detention?

        16              MR. HSIEH:  Your Honor, the government proffers the

        17    indictment, the pretrial services report, the recommendation

        18    of detention by both the Eastern District and the pretrial

        19    services officer here, and if needed, I e-mailed to the

05:49PM 20    courtroom deputy a couple publicly filed state documents.

        21    I'm not sure the Court received those hours ago?

        22              THE COURT:  I received those.

        23              Ms. Ale, did you receive those?

        24              MS. ALE:  I did.

05:49PM 25              THE COURT:  Anything further to proffer, Mr. Hsieh?

1          MR. HSIEH:  Not at this time, Your Honor.

2          THE COURT:  Ms. Ale, any information you want to

3    proffer before argument?

4          MS. ALE:  Yes, Your Honor.  In addition to Ms.

05:49PM    5    Palma's husband, who is a willing surety, Ms. Palma's

6    daughter, Michelle, is also a willing surety.  She's willing

7    to sign an unsecured bond of up to $25,000, and is also

8    willing to take third-party custody of his Ms. Palma and have

9    Ms. Palma live in her home on home confinement.

05:50PM    10         THE COURT:  Mr. Hsieh, let me hear your argument

11   concerning detention.

12         MR. HSIEH:  Yes, Your Honor, in this case there's

13   both risk of flight and danger to the community.  I'll note

14   in the pretrial services report it noted that this defendant

05:50PM    15   in 2009 is faced with similar healthcare fraud charges based

16   on anti-kickback statute.  In 2009 had a pretrial bond

17   revoked, and I think that's good evidence of what her

18   behavior is in regards to court orders.  She -- my

19   understanding is she agreed to self-surrender through her

05:50PM    20   attorney and failed to do that.  Finally appeared months

21   later --

22         THE COURT:  Mr. Hsieh, I missed what you said that

23   she agreed to self-surrender through her attorney --

24         MR. HSIEH:  I will speak slower.  After that

05:50PM    25   portion, she made an appearance before a magistrate judge in

05:51PM

05:51PM

05:51PM

05:52PM

05:52PM

```
 1   May 2009.  She was released on $50,000 bond.  I'll note in

 2   that case, there was location monitoring as well, which I

 3   assume -- or I think defense counsel may propose as a

 4   condition.  As noted in the pretrial services report, she

 5   violated that three separate times, relocating her address,

 6   and also evidence of defendant's ability not to follow court

 7   orders after a multi-day trial in front of Judge Klausner.

 8   She was sentenced to 42 months in custody and three years of

 9   supervised release.  And as noted in the pretrial services

10   report, that the conduct overlapped with her time period of

11   supervised release.

12        While it's not court order, she's been ordered by

13   Medicare on two occasions in the '90's and 2000s based on

14   prior convictions to not participate in the Medicare program.

15   In terms of danger, Your Honor, behavior of escalating

16   criminal conduct regarding healthcare program over 30 years.

17   She has early conviction in the 1990's regarding receiving

18   kickbacks.  In this district after a jury trial, she has her

19   own company paying kickbacks.  In the instant allegations

20   alleged her and her husband owned a hospice company and

21   billed more than 3.2 million in allegedly fraudulent claims

22   from September 20, 2015 to May 2017.

23        What is also concerning is that shortly -- her name

24   is registered with the California Secretary of State with two

25   hospices.  Shan Hospice that we proffered in November to 2020
```

as the secretary and CFO.  Also, as MSB Hospice, as secretary and CFO.  I will note in one of documents I checked today, after her arrest in December, MSB Hospice was modified in January 2021 to remove her name.  I also reiterate even if she's on home confinement, she can still manage a hospice from her home, which seems to be her intent in putting her name as the CFO and secretary of two new hospices.

As pretrial services, noted they do not believe her husband will be a suitable third-party custodian or surety.  The government agrees.  Alleged in paragraphs 3 through 4 of the indictment, her husband was co-owner of Magnolia the hospice at issue in these charges.  It is the government's position that he was aware of her prior convictions and her being banned from Medicare, even if he's not charged in the indictment.

So we focus more on the risk of danger, but then also the risk of flight is borne by her action in response to Medicare, Judge Klausner, a previous magistrate judge, and her ability not to follow those orders.

THE COURT:  Ms. Ale.

MS. ALE:  Thank you, Your Honor.  Our -- I will start out by noting that we believe that Mr. Adolpho, the notation in the pretrial services report, that Mr. Adolpho is not a viable surety because he has a $25,000 warrant out of the Los Angeles County for driving on a suspended license.

He believes that is not accurate.  He has a current drivers's

license.  I did ask the probation office if they could run

the -- his criminal history again to verify.  They were not

able or willing to do so this evening.  We do think Ms.

Palma's husband is a viable surety.  He's willing to put --

to sign an unjustified surety up to $50,000.

          Ms. Palma, she is 71 years old.  She has

co-morbidity.  She has high blood pressure and hypertension.

I will note that in the previous revocation, it's my

understanding from reviewing the docket that although her

bond was revoked, I believe it was reinstated.  I'm not -- I

believe that's -- I believe that's accurate.  She -- she

was -- after the reinstatement, she was able and willing to

meet the conditions of release.  I believe that there are

other conditions that can be placed, such as computer

monitoring.  That could -- that would prevent any potential

managing of hospice cares, as the government suggests.

          The allegations are serious, but they're also the

least important when considering the -- whether Ms. Palma is

an adequate person to be released and whether there are

adequate conditions.  We believe that having Ms. Palma in the

custody of her daughter, who is employed, who has children,

who has served and has been a viable surety in the past,

would safeguard against the -- any concerns that the Court or

the government has.  Home confinement, not just to her

husband since issues have been raised about his viability

about a surety, but to her daughter would ensure that her

daughter is able to monitor her mother, able to make sure

that she is meeting all of the conditions of release.

It is a responsibility that her daughter takes very

seriously and -- in fact is why her daughter wants to have

her mother stay with her.  Even though it is with -- with

having kids at home and school being out, it is an added

pressure for her.  It's something she's willing to do because

she knows her mother can meet the condition of this Court.

She wants to support her mother throughout this case.

The charges, again, they are serious, but from --

with more reason, should the Court allow Ms. Palma to defend

herself against these serious charges out of custody.  This

is document-intensive case.  Ms. Palma would be able to

better defend herself if she's allowed to be released.  She

has no passport.  Hasn't traveled to the Philippines in

years.  From the pretrial services report, it noted 2004 was

the last time she had been in the Philippines.  She is a

long-time resident of the Central District.  She's been a

legal permanent resident since 1990.

Ms. Palma, her previous violations were for going

to Bakersfield without authorization.  It hasn't been for

flying across the country or leaving the country as is

suggested by noting her ties to the Philippines.

1       So we believe that a condition such as GPS

2    monitoring, home confinement to Ms. Palma's daughter's home,

3    a third-party custodian, and a bond -- a significant

4    unsecured bond from both her husband and her daughter

05:58PM    5    would -- as well as a computer monitoring would be sufficient

6    conditions to ensure that she complies with the conditions of

7    this Court.

8            THE COURT:  Mr. Hsieh.

9            MR. HSIEH:  Just, again, reiterate paragraph 3 and

05:58PM   10    4 of the indictment, while he's not charge, it is alleged

11    that the defendant's husband was involved as a co-owner.

12    Paragraph 22A also mentions a family member or someone

13    close -- the daughter is not charged, but close ties and

14    worked in this institution.  And I'll note the timing,

05:58PM   15    Your Honor, it's alleged in the indictment around the summer

16    of 2015 she started this business, which is suspicious

17    because it's around the time her supervised release ended.

18    So in which she could have understood that --

19            THE COURT:  Mr. Hsieh, I lost your sound.

06:00PM   20            MR. HSIEH:  Can you hear me.  I -- I was pointing

21    to the indictment.  We don't believe those are appropriate

22    sureties.  While those family members are not charged,

23    they're alleged to have been involved in the scheme.  I think

24    when I got cut off, I was talking about the timing towards

06:00PM   25    the end of her supervised release after a 42-month term

1    imposed by Judge Klausner after a federal jury trial in which

2    it can be inferred that perhaps she knew that time was ending

3    and started engaging in this behavior.

4          I point to the proffer of documents.  Her name is

06:00PM  5    listed as chief financial officer of the hospice of which

6    she's banned and which she's known since, I believe, the

7    early '90's that this is prohibited conduct of receiving

8    kickbacks.  She's excluded from the program.

9          With that, unless the Court has further questions,

06:01PM  10    the government would submit and ask the Court to abide by the

11    recommendation of the Eastern District and the pretrial

12    services and the government in this district with detention.

13          THE COURT:  Anything further, Ms. Ale?

14          MS. ALE:  Yes, Your Honor.  I would note that I

06:01PM  15    don't believe this is a presumption case.  I would also note

16    that even the government has suggested that it's her family

17    members, it is specifically her daughter who is not charged

18    in the indictment but referenced in it, I have no reason --

19    we have not been -- we have no reason to believe she is the

06:01PM  20    person who -- who is alleged to be involved in the

21    conspiracy.

22          As to supervised release issue, if Ms. Palma had

23    been so cognizant or so or mindful that the the time of her

24    supervised release were ending so she could engage in further

06:02PM  25    alleged misconduct, it would also suggest that she would have

waited until she was, in fact, of supervised release.  So I

think that's the extra layer of imputing misconduct or extra

crime -- extra criminality onto Ms. Palma is not accurate.

Like I said, we believe that there are stringent

06:02PM    and significant conditions that this Court can place and that

Ms. Palma's daughter is a viable surety.

With that, I submit.  Thank you, Your Honor.

THE COURT:  Thank you to you both.  The issues that

concerns the Court the most, having listened to both sides,

06:03PM    is the allegation of overlap, I guess, between a prior order

of supervision or supervised release and the start of the

allegations in this indictment.  Because if she's on

supervised release under a court order, and she's allegedly

engaging in criminal activity, that is a problem for this

06:03PM    Court.

On the other hand, the allegations in the

indictment are -- while not old, they are a few years past.

I think allegedly ended in about 2017.  Now, I know there's

documentation that she was, perhaps, listed as an officer or

06:04PM    whatnot of entities that she shouldn't have been.  That's a

problem as well.  So there's problems here.  I mean, there's

problem with just letting her out, but I think that there are

conditions that would reasonably assure her appearance and

the safety of the community.  As it's not a presumption case,

06:04PM    the Court is going to find that these conditions will do so.

1      Ms. Palma, I want you to listen very carefully to

2  the conditions that the Court is going to set, because if you

3  violate any of them, even something that you might consider a

4  small violation, I will not consider it a small violation,

06:04PM   5  and you will be back in custody.

6      Do you understand that?

7      THE DEFENDANT:  Yes, okay.

8      THE COURT:  Here are the conditions:  It's going to

9  be a $75,000 appearance bond with a cash deposit of $25,000

06:05PM   10  and two affidavits of surety, each in the amount of $25,000.

11  One from defendant's husband and one from her daughter.

12  That's a total of 75,000.  Pretrial services supervision.

13  Defendant is to surrender any passports to pretrial.  Sign a

14  declaration re passport or other travel documents and not

06:05PM   15  apply for a passport or other travel documents during the

16  pendency of the case.  Travel is restricted to the Central

17  District of California, unless prior permission is granted by

18  pretrial to travel to another location.  There will be no

19  international travel.  Defendant is to reside as approved by

06:06PM   20  pretrial.  Residence is with her daughter.  Can I have the

21  daughter's name for the record, please.

22      MS. ALE:  Yes, Your Honor.  Michelle -- sorry.  One

23  quick second while I get her last name.

24      MR. HSIEH:  I believe Vargas.

06:06PM   25      MS. ALE:  Thank you.

1          THE COURT:  V-a-r-g-a-s.  All right.

2          Defendant is to avoid all contact directly or

3     indirectly, including by electronic means with any person who

4     is a known victim or a witness in this investigation or

5     prosecution.

6          Mr. Hsieh, I know her husband is not a defendant.

7     Even though she's not going -- I'm not going to make him a

8     third-party custodian.  I'm reluctant to say no contact

9     between the two them, but I'm open to suggestions to limit,

10    you know, what they may discuss or any business that they may

11    conduct together.

12          Do you have suggestions for the Court?

13          MR. HSIEH:  Yeah.  I do have suggestions, but I

14    think it will be hard to enforce.  I agree, given my

15    understanding is they may be married and to kind of separate

16    them will be difficult.  If there's a court order in place

17    regarding not to discuss the substance of the allegations

18    regarding Medicare fraud or hospice care and kickbacks.  You

19    know, the Court can order that.  I just think that might be

20    fine, but it will be hard to enforce.

21          I think Ms. Ale mentioned some sort of search

22    conditions.  The government will strenuously argue search at

23    all times of all electronic devices.  Again, with the husband

24    will be in person, but we believe with the sheltering at

25    home, the Court could have good intentions.  We don't know it

```
 1   will be abided by.

 2          THE COURT:  I'm not going to go down that rabbit

 3   hole then.  The defendant is not to use or possess any

 4   identification, mail matter, access device, or

 5   identification-related material other than in her own true or

 6   legal name without prior permission from pretrial.  To

 7   determine compliance, she agrees to search of her person or

 8   property by pretrial in conjunction with the marshals.

 9          Defendant --

10          THE DEFENDANT:  Yes, okay.

11          THE COURT:  Defendant is to participate in a

12   location monitoring program, abide by all of the requirements

13   under the program under the direction of pretrial, which

14   won't include location monitoring bracelet, but will use a

15   voice verification system.  Defendant shall pay all or part

16   of the cost of the program based on ability to pay as

17   determined by pretrial.  Defendant will be restricted to her

18   residence at all times except for medical needs or treatment,

19   attorney visits, and court appearances, all of which must be

20   pre-approved by pretrial.

21          Defendant will be placed in the third-party custody

22   of her daughter.  And defendant is not to engage in any

23   conduct involving Medicare or hospice care while out on bond.

24          THE DEFENDANT:  Okay.

25          THE COURT:  Mr. Hsieh, other conditions that the
```

1    government might -- I know you don't think that bond should

2    be ordered, but given that I'm ordering it anyway, are there

3    other conditions that you think might be reasonably imposed?

4         MR. HSIEH:  Give me a moment.  I would ask for the

06:10PM    5    GPS monitoring.  I understand it's a little more onerous on

6    pretrial services for the non-voice monitoring, but it's a

7    better ability, given she travels from Bakersfield and

8    Los Angeles to have a better sense --

9         THE COURT:  Where does her daughter live?

06:11PM    10    MS. ALE:  Arcadia.

11         THE COURT:  She's not traveling between Bakersfield

12    and Los Angeles.  Travel is restricted to the Central

13    District.  She's residing with her daughter.  So I understand

14    that are problems with the -- with imposing GPS these days.

06:11PM    15    I'm going to leave it at voice verification.

16         MR. HSIEH:  We discussed this a little bit earlier.

17    I would ask again if you can craft it in a way do not discuss

18    this case with any victims or known witnesses, at least the

19    subject matter of -- contained in the indictment.

06:11PM    20         THE COURT:  I thought that I imposed a condition

21    not to contact directly or indirectly anyone who is a victim

22    or known witness?

23         MR. HSIEH:  Okay.  The government is fine with

24    that.  Thanks for clarifying.

06:11PM    25         THE COURT:  Ms. Ale, any clarification concerning

```
        1    any of the conditions?
        2              MS. ALE:  Not from me, Your Honor.
        3              THE COURT:  Let me ask, Ms. Palma, do you
        4    understand the conditions that the Court is setting?
06:12PM 5              THE DEFENDANT:  Yes, I understand it, but one thing
        6    is, are you going to put me under a monitor?
        7              THE COURT:  Yes, you're under verification
        8    monitoring.
        9              THE DEFENDANT:  All right.  I can have that.
06:12PM 10             THE COURT:  All right.  So do you understand that
        11   if you mess up on any of these conditions, if you fail to
        12   abide by all of these conditions, you'll be back in custody,
        13   and your family will be out quite a bit of money?  Do you
        14   understand that?
06:12PM 15             THE DEFENDANT:  Yes, I understand everything.
        16             THE COURT:  Do you agree to these conditions then?
        17             THE DEFENDANT:  Can my lawyer say something like a
        18   term?
        19             THE COURT:  I didn't understand that?
06:13PM 20             THE DEFENDANT:  Can my lawyer say something or
        21   affirm?
        22             THE COURT:  I'm not sure I understand what she's
        23   asking?
        24             THE DEFENDANT:  Can my lawyer say something about
06:13PM 25   the condition?
```

20

1        THE COURT:  What do you want her to say about a

2    condition?

3        THE DEFENDANT:  With the monitoring, it's as if I'm

4    a criminal.  I am so sorry about that.

06:14PM  5        THE COURT:  Well, you're charged with a crime, Ms.

6    Palma.  If you want to be out on bond, these are the

7    conditions that you must follow.  If you think you're going

8    to have a problem following them, then you shouldn't be

9    released on bond because you'll be in more trouble if you

06:14PM 10    violate these conditions and are back in custody, because you

11    and your family will also be out a lot of money.  Do you

12    understand that?

13        THE DEFENDANT:  So how much is the monitering?

14    Shall I pay the monitering?

06:14PM 15        THE COURT:  That's probably not the most important

16    of your concerns right now.  You don't have to worry about

17    paying the monitoring right now.  If there are costs, you'll

18    be told about it when you're on the monitoring.

19        THE DEFENDANT:  Okay.  Okay.

06:15PM 20        THE COURT:  Do you agree to follow all of these

21    conditions, Ms. Palma?

22        THE DEFENDANT:  Yes, yes.

23        THE COURT:  All right.  Release will be upon the

24    posting of the two affidavits of surety and the affidavit re

06:15PM 25    third-party custodian and the passport and passport

1  declaration.  Once she's out, there will be 48 hours to post

2  the $25,000 cash with the Court.  And assuming that she

3  agrees, Ms. Ale, to have you sign on bond on her behalf,

4  she'll also have 48 hours upon release to initial and sign

06:16PM  5  the bond?  Okay?

6          MS. ALE:  Understood, Your Honor.

7          THE COURT:  Ms. Palma, is it okay for your attorney

8  to sign the bond form on your behalf, and then you sign it

9  within 48 hours after your release?  Is that okay with you?

06:16PM  10         THE DEFENDANT:  Yes, she can sign for me.

11         THE COURT:  Do you understand you have to sign it

12  within 48 hours of your release?

13         THE DEFENDANT:  I don't know.  What did my daughter

14  say?

06:17PM  15         THE COURT:  I'm sorry?

16         THE DEFENDANT:  I don't know.  What did my daughter

17  say?

18         THE COURT:  Well, your daughter has agreed to sign

19  the bond on her behalf.

06:17PM  20         THE DEFENDANT:  Okay.

21         THE COURT:  You also will be given a form when you

22  leave custody that the marshals will give to you.  It will

23  have some other conditions that you need to follow as well.

24  Do you agree to follow those?

06:17PM  25         Mr. Hsieh, for your information, those are the

|  |  |
|---|---|
| 1 | general conditions on bond that are on the form. |
| 2 | Do you agree to follow, those Ms. Palma? |
| 3 | THE DEFENDANT:  Yes. |
| 4 | THE COURT:  Okay.  Thank you. |
| 06:17PM  5 | Can we proceed to the post-indictment arraignment, |
| 6 | then, Ms. Ale? |
| 7 | MS. ALE:  Yes, Your Honor. |
| 8 | THE COURT:  Mr. Hsieh, any problem with doing that? |
| 9 | MR. HSIEH:  No, Your Honor. |
| 06:18PM 10 | THE COURT:  Go ahead. |
| 11 | THE CLERK:  Is Nita Almuete Paddit Palma your true |
| 12 | name? |
| 13 | THE DEFENDANT:  Yes. |
| 14 | THE CLERK:  Have you read or has the statement of |
| 06:18PM 15 | your rights been read to you in Tagalog? |
| 16 | THE DEFENDANT:  Yes. |
| 17 | THE CLERK:  Do you understand the statement of your |
| 18 | rights? |
| 19 | THE DEFENDANT:  Yeah. |
| 06:18PM 20 | THE CLERK:  Did you sign or did you authorize your |
| 21 | attorney to sign the statement of your rights on your behalf? |
| 22 | THE DEFENDANT:  It's okay.  No problem. |
| 23 | THE COURT:  You have to answer the question. |
| 24 | THE CLERK:  Did you sign or authorize your attorney |
| 06:19PM 25 | to sign the statement of rights on your behalf? |

```
 1                THE DEFENDANT:  Yes.
 2                THE CLERK:  Did you receive a copy of the
 3       indictment or have -- was the indictment read to you in
 4       Tagalog?
 5                THE DEFENDANT:  Yes, but I do not have any copies
 6       at all.
 7                THE COURT:  Your attorney will give you one when
 8       get out.  Okay?
 9                THE CLERK:  Do you understand the substance of the
10       charges pending against you?
11                THE DEFENDANT:  Yes, I understand them all.
12                THE COURT:  This matter has been assigned to the
13       calendar of Judge Gee.  Will this be a not guilty plea,
14       counsel?
15                MS. ALE:  Yes, Your Honor.
16                THE COURT:  Let's take that plea then, please.
17                THE CLERK:  Nita Paddit Palma, how do you plead to
18       the charges contained in the indictment?  Guilty or not
19       guilty?
20                THE DEFENDANT:  I do not know.  I didn't do
21       anything wrong.
22                THE COURT:  Do you plead guilty or not guilty,
23       ma'am?
24                THE DEFENDANT:  We will go to -- we want to go to
25       trial because we want justice also.
```

06:19PM  (line 5)
06:20PM  (line 10)
06:20PM  (line 15)
06:20PM  (line 20)
06:21PM  (line 25)

1          THE COURT:  I will enter a not guilty plea on

2     behalf of the defendant.  Trial in this matter is set for

3     March 30, 2021 at 8:30.  There will be a pretrial conference

4     on March 17, 2021 at 2:30 p.m.  The government is ordered to

06:21PM   5     turn over any discovery within two weeks after today.  If

6     there are any problems regarding discovery, counsel shall

7     file a joint report within one week of the discovery deadline

8     or request a status conference.  Judge Gee is located in

9     Courtroom 8C, 8th floor of the First Street courthouse.

06:21PM   10          Finally, under federal law, including Rule 5F of

11     the Federal Rules of Criminal Procedure, the Supreme Court's

12     decision in *Brady* and all applicable decisions interpreting

13     *Brady*, the government is ordered to disclose to the defendant

14     in a timely manner, all evidence or information known to the

06:22PM   15     government that these are relevant to the defendant's guilt

16     or punishment, favorable to the defendant on the issue of

17     guilt or punishment.  The consequences for violating this

18     order or the government's obligations under *Brady*, include

19     but are not limited to contempt, sanction, referral to

06:22PM   20     disciplinary authority, adverse jury instruction, exclusion

21     of evidence, and dismissal of charges.  A written order will

22     be entered on the court docket.

23          Mr. Hsieh, anything further on this matter?

24          MR. HSIEH:  Not from the government, thank you,

06:22PM   25     Your Honor.

1          THE COURT:  Ms. Ale?

2          MS. ALE:  Nothing further from the defense.  Thank

3   you, Your Honor.

4          THE COURT:  Thank you very much.  Thank you to the

06:22PM   5   interpreter as well.

6          (Proceedings concluded at 6:22 p.m.)

7                          CERTIFICATE

8   I HEREBY CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT

9   TRANSCRIPT OF THE STENOGRAPHICALLY RECORDED PROCEEDINGS IN

10  THE ABOVE MATTER.

11  FEES CHARGED FOR THIS TRANSCRIPT, LESS ANY CIRCUIT FEE

12  REDUCTION AND/OR DEPOSIT, ARE IN CONFORMANCE WITH THE

13  REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

14

15  /s/ Miriam V. Baird          03/28/2024

16  MIRIAM V. BAIRD                      DATE
    OFFICIAL REPORTER
17

18

19

20

21

22

23

24

25